**Juana RODRIGUEZ, by her son and next friend, Wilfredo RODRIGUEZ, Amelia Russo, Mary Weinblad, by her daughter and next friend, Susan Downes, Cristos Gouvatsos, Sidonie Bennett, individually and on behalf of all others similarly situated, Plaintiffs–Appellees–Cross–Appellants,**

**Ruvim Aselrod, Intervenor–Plaintiff– Appellee–Cross–Appellant,**

**v.**

**Barbara A. DEBUONO, Commissioner of the New York State Department of Health, Brian Wing, Acting Commissioner of the New York State Department of Social Services, Defendants– Appellants–Cross–Appellees,**

**City of NY, Commissioner of the Westchester County Department of Social Services, Commissioner of Suffolk County Department of Social Services,**

\* Hon. Peter K. Leisure, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

Irene Lapidez, Commissioner Nassau County Department of Social Services, Intervenor–Defendants–Appellants–Cross–Appellees.

Docket Nos. 97–9152, 97–9176, 97–9178, 97–9204, 97–9206 and 97–9186.

United States Court of Appeals, Second Circuit.

Argued May 6, 1998.

Decided Nov. 16, 1998.

As Amended March 23, 1999.

James M. Hershler, Assistant Attorney General of the State of New York, New York City, (Dennis C. Vacco, Attorney General of the State of New York, John W. McConnell, Deputy Solicitor General, Robert A. Forte, Assistant Attorney General, New York City, of counsel), for Defendants–Appellants–Cross–Appellees.

Mordecai Newman, New York City, (Paul A. Crotty, Corporation Counsel of the City of New York, Larry A. Sonnenshein, Judith C. McCarthy, Corporation Counsel's Office of the City of New York, New York City, of counsel), for Intervenor–Defendant–Appellant–Cross–Appellee City of NY.

Leslie F. Salzman, Cardozo Bet Tzedek Legal Services, New York City, (Toby Golick, Sandra Kraus, Frances Mingoia, Cardozo Bet Tzedek Legal Services, New York City, on the brief; Donna Dougherty, Queens Legal Services for the Elderly, Rego Park, NY, of counsel; Michael D. Scherz, New York Legal Assistance Group, New York City, of counsel), for Plaintiffs–Appellees–Cross–Appellants.

Michael T. Hopkins, Hopkins Kopilow & Weil, Garden City, NY, of counsel, for Intervenor–Defendant–Appellant Lapidez,

Commissioner Nassau County Department of Social Services.

Gregory F. Meehan, Acting Westchester County Attorney, Stacey Dolgin–Kmetz, Deputy County Attorney, Linda M. Trentacoste, Sr. Assistant County Attorney, Lori Alessio, White Plains, NY, of counsel, for Intervenor–Defendant–Appellant–Cross–Appellee Commissioner of the Westchester County Department of Social Services.

Robert J. Cimino, Suffolk County Attorney, Barbara Barton, Assistant County Attorney, Theodore D. Sklar, Hauppauge, NY, of counsel, for Intervenor–Defendant–Appellant–Cross–Appellee Commissioner of Suffolk County Department of Social Services.

Valerie J. Bogart, Center for Disability Advocacy Rights, New York City, of counsel, for Amici Curiae The Alzheimer's Disease and Related Disorders Association, Inc., National Office and New York City Chapter, American Association of Retired Persons, National Association of Protections and Advocacy Systems, National Alliance for the Mentally Ill, Friends and Relatives of the Institutionalized Aged, Inc., Nursing Home Community Coalition of New York, Discharge Planning Association of New York City, National Senior Citizens Law Center, New York StateWide Senior Action Council, and Disabled in Action of Metropolitan New York, Ltd.

Before: McLAUGHLIN, PARKER and PHILLIPS, JR.[*], Circuit Judges.

PER CURIAM.

Barbara A. DeBuono, Commissioner of the New York State Department of Health, and Brian Wing, Acting Commissioner of the New York State Department of Social Services (together, the "State"), as well as the respective Departments of Social Services of the City of New York (the "City"), Nassau County ("Nassau"), Westchester County ("Westchester"), and Suffolk County ("Suffolk") (collectively "Intervenor–Defendants" and with the State, "Defendants") appeal from an amended opinion and order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) entered August 25, 1997 ("August 25 Order") granting in part plaintiffs' motion for a preliminary injunction, which ordered the Defendants to assess and pay for "safety monitoring" as a separate task when performing task-based assessment ("TBA") of Medicaid "personal care services." *See Rodriguez v. Debuono*, 177 F.R.D. 143 (S.D.N.Y.1997). The individual plaintiffs and intervenor-plaintiffs, as representatives of the certified class (collectively "Plaintiffs"), cross-appealed that portion of the August 25 Order dealing with class certification.[1] We vacate and remand for further proceedings for the reasons stated below.

## I. BACKGROUND

This is an appeal from a class action lawsuit that challenges the implementation of TBA programs, which are used in New York to determine the amount of personal care services hours authorized for eligible Medicaid applicants and recipients. Generally, Plaintiffs are Medicaid eligible elderly individuals who suffer from mental disabilities that cause them to require assistance with daily living tasks. Under TBA programs, the named Plaintiffs have received personal care services that are allegedly inadequate to address their medical needs in order to permit them to remain living in their homes. Many members of the class have subse-

---

[*] The Honorable J. Dickson Phillips, Jr., of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

1. Plaintiffs filed a notice of cross-appeal "to the extent the [August 25 Order] denied plaintiffs' motion for a preliminary injunction and denied, in part, plaintiffs' motion for certification of a statewide class." However, the issues raised in this notice of cross-appeal were not argued in Plaintiffs' briefs on appeal and are thus deemed waived.

quently received unfavorable state fair hearing decisions.[2]

In the court below, Plaintiffs filed both a class action complaint and an order to show cause for a preliminary injunction to enjoin the "operation of [TBA] as currently designed throughout New York State." Basically, Plaintiffs contend that Defendants' refusal to provide so-called "safety monitoring" as an independent task discriminates against otherwise eligible mentally disabled applicants and recipients in violation of the "comparability" provision contained in a sub-paragraph of the federal Medicaid statute, 42 U.S.C. §§ 1396a(a)(10)(B). Section 1396a(a)(10)(B) provides:

> [T]he medical assistance made available to any individual described in subparagraph (A) [who are categorically needy] ... (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A) [who are medically needy].

42 U.S.C. § 1396a(a)(10)(B).[3] Also, Plaintiffs allege that TBA notices violate due process and federal law by failing to advise applicants and recipients adequately of the extent and nature of their personal care services authorizations.

Despite opposition from Defendants, the district court first granted in part and denied in part Plaintiff's request for class certification and then granted in part and denied in part Plaintiffs' motion for a preliminary injunction. Pursuant to Fed. R.Civ.P. 23, the district court certified a class consisting of all New York State Medicaid home care applicants and recipients whose need for home care services has been or will be determined by TBA (the "notice" class). *See Rodriguez*, 177 F.R.D. at 152. In addition, the district court certified two sub-classes of the "notice" class, granting statewide certification to the "safety monitoring" sub-class but limiting certification of the "span of time" sub-class to the City and Nassau.[4] *See Rodriguez*, 177 F.R.D. at 151–55.

Next, the district court found that it had jurisdiction to hear Plaintiffs' statutory claims because 42 U.S.C. § 1396a(a)(10)(B) and the applicable regulations provide for an enforceable private right of action pursuant to 42 U.S.C. § 1983. *See id.* at 157. As to the preliminary injunction, the district court found that Plaintiffs demon-

**2.** For a more detailed description of the exact circumstances of the Plaintiff class, *see Rodriguez v. Debuono*, 177 F.R.D. 143, 148–151 (S.D.N.Y.1997).

**3.** The federal regulation which explains 42 U.S.C. § 1396a(a)(10)(B) similarly provides in relevant part:

> (a) The plan must provide that the services available to any categorically needy recipient
> ... are not less in amount, duration, and scope than those services available to a medically needy recipient; and
> > (b) The plan must provide that the services available to any individuals in the following groups are equal in amount, duration, and scope for all recipients within the group:
> > (1) The categorically needy.
> > (2) A covered medically needy group.

42 C.F.R. § 440.240. "Categorically needy refers to families and children, aged, blind or disabled individuals, and pregnant women ... who are eligible for [Medicaid]" and "who, generally, are receiving or deemed to be receiving cash assistance under the [Social Security] Act." 42 C.F.R. § 436.3. "Medically needy means families, children, aged, blind, or disabled individuals, and pregnant women who are not ... categorically needy but who may be eligible for [Medicaid] ... because their income and resources are within limits set by the State under its [Medicaid] plan." *Id.*

**4.** The "safety monitoring" class consists of those home care applicants or recipients who have received or will receive inadequate home care authorization due to TBA's failure to provide safety monitoring unrelated to a specific task. *See Rodriguez*, 177 F.R.D. at 151–52. The "span of time" class consists of those applicants or recipients who received inadequate home care due to TBA's failure to authorize sufficient hours of care to cover the span of time over which unscheduled and recurring needs occur. *See id.*

strated a "substantial" likelihood of success on the merits: (1) of their "safety monitoring" claims pursuant to both 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.240(b), see id. at 157–61, and (2) of their claim that due process requires the City's notices of TBA determinations for applicants and recipients to include the number of hours authorized and the allocation of those hours by the number of hours per day. See id. at 164–65. However, the district court found that Plaintiffs' failed to make such a required showing with regard to (1) their "span of time" claims against the City or Nassau, see id. at 161–163; and (2) the remainder of their notice claims. See id. at 165, 167. Finally, the district court found that Plaintiffs showed that they would suffer irreparable harm absent preliminary relief and that the balance of the public interests tipped in favor of granting the injunction. See id. at 165–66. As a result, the district court ordered the following preliminary relief:

> [1] that Defendants include safety monitoring as a separate task on their TBA forms, assess the need for safety monitoring as a separate task, and calculate any minutes allotted for safety monitoring as part of the total personal care services hours authorized, for both applicants and recipients [the "Safety Monitoring Relief"]; and . . .

> [2] that the City of New York include the total number of task hours authorized and the allocation of those hours by the number of hours per day as a component of its initial notice, and, to the extent this information is not already included, as a component of its reauthorization notice.

Id. at 167.

Each of the Defendants filed a timely notice of appeal.[5] Pursuant to Fed. R.Civ.P. 62(c), the City moved for an order pending appeal staying the first portion of the district court's amended order which required Defendants to provide the Safety Monitoring Relief. This motion was joined by Suffolk, Westchester and Nassau. Plaintiffs opposed it. Despite its previous finding of irreparable harm on the preliminary injunction motion, the district court granted the Defendants' request for a stay of the preliminary injunction pending appeal.

## II. DISCUSSION

Defendants challenge the district court's August 25 Order, arguing that 42 U.S.C. § 1396a(a)(10)(B) does not afford an enforceable private right of action pursuant to 42 U.S.C. § 1983 and that Plaintiffs were not entitled to a preliminary injunction. Plaintiffs argue that the district court could have granted the preliminary injunction on alternative grounds plead in their complaint, pursuant to certain other aspects of the Medicaid statute, 42 U.S.C. § 1396a(a)(1), and the Americans with Disabilities Act, 42 U.S.C. § 12182(b)(1)(B). For the reasons stated below, we vacate the August 25 Order of the district court to the extent that it granted the Safety Monitoring relief in favor of the Plaintiffs.[6]

### A. *Jurisdictional Issues*

■■■ Section 1983 provides a right of action against any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Defendants claim that the courts are without jurisdiction to entertain claims made under § 1396a(a)(10)(B) because this section "is too vague and amorphous to be judicially

---

5. Although the City's notice of appeal stated its intent to appeal "each and every part" of the August 25 Order, their brief on appeal indicates that it does not appeal from that portion of the order which requires the City to include a statement of authorized hours in its notices.

6. We do not disturb that portion of the August 25 Order, directing the City to alter its TBA notices, which the City has expressly declined to pursue on appeal.

enforceable" and, accordingly, Plaintiffs can not assert a § 1983 private right of action accruing under § 1396a(a)(10)(B).

■ To determine whether a private right of action exists under a federal statute, a plaintiff must show that the statute is: (1) "intended to benefit" the plaintiff seeking to enforce it; (2) a "binding obligation on the governmental unit," rather than "merely a congressional preference for a certain kind of conduct;" and (3) not so "vague and amorphous" as to be "beyond the competence of the judiciary to enforce." *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quotation marks and citation omitted). The district court found that § 1396a(a)(10)(B) satisfied the test laid out in *Wilder.*

■ Both the defendants and the district court characterized the question whether 42 U.S.C. § 1396a(a)(10)(B) provides an·enforceable private right of action pursuant to § 1983 as jurisdictional. Subject matter jurisdiction exists as long as a complaint states a colorable federal claim. *Savoie v. Merchants Bank,* 84 F.3d 52, 57 (2d Cir.1996). The complaint at issue here easily meets that "modest" standard, *id.,* since a determination of whether the plaintiffs have stated a right for which there is a judicially enforceable remedy necessitates the interpretation of two federal statutes. *See Bell v. Hood,* 327 U.S. 678, 684–685, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946) (noting that the court had jurisdiction because plaintiffs' right to recover depended upon the construction given the Constitution and a federal statute).

The issue of whether 42 U.S.C. § 1396a(a)(10)(B) provides an enforceable private right of action pursuant to § 1983, therefore, does not implicate jurisdiction. Rather, it is more aptly viewed as a question of whether the plaintiffs have failed to state a claim upon which relief may be granted. *Id.* at 682–85. Because we vacate on other grounds, we do not reach this issue. The defendants, therefore, may raise this matter upon further proceedings. Fed.R.Civ.P. 12(h)(2).

### B. *The Preliminary Injunction*

■ Defendants attack the grounds for the district court's grant of the preliminary injunction in favor of the Plaintiffs' safety monitoring claims on a number of grounds, including Plaintiffs' lack of a substantial likelihood of success on the merits. Plaintiffs counter with a number of alternative grounds for finding such a substantial likelihood of success. We do not reach the merits of the parties' arguments regarding substantial likelihood of success (or lack thereof) because we find that the district court's grant of a preliminary injunction must be reversed solely on the 'issue of irreparable harm. We review the district court's grant of a preliminary injunction for abuse of discretion. *See, e.g., Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996).

■ When seeking a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme," the moving party must show: (1) "it will suffer irreparable harm" absent the injunction and (2) "a likelihood of success on the merits." *Id.* at 473 (quotation marks and citations omitted). However, where "the injunction sought will alter rather than maintain the status quo," the movant must show "clear" or "substantial" likelihood of success. *Id.* (quotation marks and citation omitted). As a final consideration, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury·and probability of success on the merits warrants injunctive relief." *Time Warner Cable of New York City v. Bloomberg L.P.,* 118 F.3d 917, 929 (2d Cir.1997).

#### 1. *Irreparable Harm*

■ Defendants argue that the district court erred in finding irreparable harm to the Plaintiffs. Irreparable harm

is " 'the single most important prerequisite for the issuance of a preliminary injunction.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2948 at 431 (1st ed.1973)). Accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir.1995) (quotation marks and citation omitted); *see also Sweeney v. Bane*, 996 F.2d 1384, 1387 (2d Cir.1993) (upholding denial of preliminary injunction seeking to prevent erroneous Medicaid co-payments because harm was purely financial). In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *Sierra Club v. Hennessy*, 695 F.2d 643, 647 (2d Cir.1982).

 At oral argument it became clear that, despite the district court's finding of irreparable harm to the Plaintiff class for purposes of granting a preliminary injunction, the district court subsequently granted Defendants' request for a stay of enforcement of the preliminary injunction pending appeal, pursuant to Fed.R.Civ.P. 62. To determine whether a stay of an order pending appeal is appropriate, a court must evaluate the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). *See Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2d Cir.1996). In applying these factors, the district court found that a stay was appropriate. *See Rodriguez v. De-Buono*, No. 97 Civ. 700 (S.D.N.Y. Oct. 23, 1997) (Transcript of Hearing and Ruling on Defendants' Rule 62 Motion) (hereinafter "Hearing Tr.").

Primarily, we are concerned with the district court's analysis of the third stay factor because it impacts directly upon the lower court's grounds for granting a preliminary injunction.[7] The district court recognized that the August 25 Order "was predicated, in part, on the belief that the plaintiffs have been injured by the practices I have enjoined," and "granting a stay ... will allow these injuries to go unremedied until an appeal is heard." Hearing Tr. at 6. Nevertheless, the district court found that "the injury caused by the stay will not be great," nor cause serious or irreparable harm to the Plaintiffs for the following three reasons: (1) "appellate review can be obtained quickly;" (2) members of the plaintiff class will not "suffer permanent harm as a result of the stay;" and (3) "plaintiffs have failed to demonstrate that large numbers of people will be harmed in the brief period before the appeal is heard." Hearing Tr. at 6–7. Thus, the basic rationale underlying the district court's grant of stay was that the brevity of the stay pending appeal will not result in serious or irreparable harm.

 Under these circumstances, where the order stayed involves a preliminary injunction, a principle element of which is a finding of irreparable harm that is imminent, it is logically inconsistent, and in fact a fatal flaw, to subsequently find no

---

7. We note that because the district court's grounds for granting the stay were not appealed by the Plaintiffs, we neither agree nor disagree with the reasoning of the district court on the other three stay factors.

irreparable nor even serious harm to the Plaintiffs pending appeal. For purposes of preliminary injunctions, the irreparability of harm may not be casually suspended pending appeal: the harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm. *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2948.1, at 144–49 (2d ed. 1995) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief. Therefore, if a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.") (footnote omitted). Where a movant is found to be able to wait for the outcome of an appeal before obtaining preliminary injunctive relief, the irreparable harm he or she faces may not ordinarily be deemed "imminent" as required to sustain a preliminary injunction. Therefore, the grant of a stay of a preliminary injunction pending appeal will almost always be logically inconsistent with a prior finding of irreparable harm that is imminent as required to sustain the same preliminary injunction.[8]

■ In the instant case, more than eight months passed from the time when the district court entered its amended order granting preliminary injunctive relief and when this Court heard argument. During these many intervening months, preliminary relief has been stayed. This lapse of time between a final order of the district court and the hearing of an appeal is by no means unusual. The seasoned district judge was undoubtedly aware of this typical time-delay before an appeal is heard when she awarded Defendants their stay of the preliminary injunction. Furthermore, because the district court had already held two weeks of hearings on the preliminary injunction motion, the time pending appeal was comparable to the time during which a trial on the merits could have been completed.[9] Therefore, we can only infer from the grant of this stay of preliminary relief pending appeal that the district court abused its discretion by fundamentally misunderstanding the requirement that the alleged harm must be "imminent" in order to be deemed irreparable for purposes of granting a preliminary injunction.

■ The problem in this case was caused by the fact that the district court did not limit its stay to the time necessary to seek and obtain an expedited appeal from the Court of Appeals. Nothing in this opinion should be taken to in any way inhibit a district court from granting a brief stay of a preliminary injunction in an appropriate case in order to permit the Court of Appeals an opportunity to consider an application for a stay pending an expedited appeal. Such brief stays for a matter of days are frequently issued when a district court denies an open-ended stay

---

**8.** There may well be possible factual scenarios in which a stay of a preliminary injunction pending appeal would *not* be logically inconsistent with the "imminence" of the harm requirement, for instance, where a court grants a stay of a preliminary injunction pending an expedited appeal and the threatened harm is expected to occur on an ascertainable date occurring after the hearing date for that appeal.

**9.** Considering that the district court held two weeks of hearings on Plaintiffs' preliminary injunction motion, we note that the district court could have exercised its discretion to convert this motion for preliminary injunction into a trial upon the merits of the permanent injunction, pursuant to Fed.R.Civ.P 65(a)(2).

If a Rule 65(a)(2) conversion had been made, we would have likely reviewed any stay of the resulting permanent injunction under a less stringent standard. Although a showing of "irreparable harm" is required for the imposition of any injunctive relief, preliminary or permanent, *see Sierra Club v. Hennessy*, 695 F.2d 643, 647 (2d Cir.1982), the "imminent" aspect of the harm is not crucial to granting a permanent injunction. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (finding that although period of delay may not rise to the level of laches and thereby bar permanent injunction, it may still indicate absence of irreparable harm required to support preliminary injunction).

pending appeal. They give the appellate court an opportunity to decide whether an additional stay and an expedited appeal should be granted.

Accordingly, we vacate that portion of the district court's August 25 Order which imposes a preliminary injunction granting Safety Monitoring Relief.

### III. CONCLUSION

We vacate the amended opinion and order of the court below to the extent that the district court ordered Defendants to provide Safety Monitoring Relief in its preliminary injunction in favor of the Plaintiffs. We remand for further proceedings.