**William BRODY, Plaintiff–Appellee,**

v.

**VILLAGE OF PORT CHESTER, Defendant–Appellant.**

**Docket No. 01–7201.**

United States Court of Appeals, Second Circuit.

Argued June 26, 2001.

Decided Aug. 08, 2001.

Alan D. Scheinkman (Darryll A. Buford and J. William Cook, on the briefs), Epstein, Becker & Green, P.C., New York, NY, for Defendant–Appellant.

Dana Berliner, Institute for Justice, Washington, DC, (William H. Mellor and Marni Soupcoff, Institute for Justice, Washington, DC, Martin S. Kaufman, Atlantic Legal Foundation, New York, NY, on the briefs), for Plaintiff–Appellee.

Before MINER and LEVAL, Circuit Judges, and RAKOFF, District Judge.*

RAKOFF, District Judge:

The Village of Port Chester, New York, appeals a preliminary injunction enjoining it from proceeding further with condemnation of real property owned by plaintiff-appellee William Brody. Concluding that the district court abused its discretion, we vacate the injunction and remand for further proceedings.

Since at least 1991, the Village has been planning the redevelopment of its blighted waterfront and downtown area. As part of this process, the Village, pursuant to New York's Eminent Domain Procedure Law ("EDPL"), held a public hearing on June 7, 1999 to review the public use to be served by the proposed redevelopment. William Brody, whose property was within the redevelopment zone, appeared at the hearing and asked that his property not be condemned.

The EDPL permits simple newspaper notice of a public use hearing. Nonetheless, shortly after the June 7 hearing the Village discovered that its notice had not met all the requirements of the EDPL. The Village therefore noticed a second public use hearing, which was duly held on July 6, 1999. Although the second notice met the requirements of the EDPL, Brody alleges he never learned of it and, accordingly, did not attend.

On July 18 and 19, 1999, the Village published its findings and determinations that the redevelopment project would serve to rehabilitate "certain blighted, substandard and unsanitary areas of the Village," as well as "enhance public access to the waterfront, protect and encourage water-dependent uses, promote the development of mixed use and retail commercial uses on the waterfront, remediate environmental problems, and have a positive impact on the existing and continued development of the Village waterfront and downtown business areas." The EDPL requires that any judicial challenge in the New York courts to such findings and determinations be filed in the Appellate Division of the New York State Supreme Court within thirty days of such publication. EDPL § 207. If no such challenge is filed, no other state court has jurisdiction to review any matter that could have been raised in the Appellate Division. EDPL § 208. Brody did not seek judicial review under EDPL § 207. In April 2000 the Village commenced court proceedings to take title to Brody's property, and in October 2000 was awarded title.

Meanwhile, however, on October 4, 2000, Brody filed the instant federal action, alleging that the EDPL violates the Due Process Clause of the Fourteenth Amendment, both on its face and as applied to him. In particular, Brody alleged that due process required the Village to provide those persons whose property was subject to condemnation with personal notice of the public use hearing and of the Village's

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

consequent findings and determinations. He further alleged that in the absence of such personal notice the thirty-day limit on judicial challenges to such findings and determinations is likewise unconstitutional.

■ Agreeing with these contentions, the district court preliminarily enjoined the Village from proceeding further with its efforts to condemn Brody's property.[1] This, however, was error, because Brody, having suffered no actual or threatened injury, lacks standing to bring these claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1095 (2d Cir. 1997).

With regard to the public use hearings, Brody had actual notice of the first hearing, on June 7, 1999, and, indeed, attended and presented his views. At the second hearing, on July 6, 1999, the Village not only adopted by reference the proceedings of the June 7, 1999 hearing but also expressly considered the comments made therein. Brody has not in any way indicated that he would have raised additional objections at the July 6 hearing had he been provided with notice. Therefore Brody has suffered no injury in fact from not knowing of the July 6 hearing.

With regard to the Village's publication of its findings and determinations and the concomitant triggering of the thirty-day limit on appeals therefrom, Brody, while complaining of the lack of personal notice, has notably not alleged that he did not receive actual notice, a *sine qua non* of demonstrating injury. Consequently, he has alleged no injury in fact stemming from the lack of personal notice of the findings and determinations.

■ Moreover, even if Brody had alleged that he had no such actual knowledge, it would not change the result.

Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief. Otherwise a claim that appears meritorious at a preliminary stage but is ultimately determined to be unsuccessful will have precipitated court action that might needlessly have injured the public interest.

*Time Warner Cable v. Bloomberg, L.P.*, 118 F.3d 917, 929 (2d Cir.1997) (citations omitted). Here, the district court failed to consider the public interests involved and to weigh them against Brody's alleged deprivations. Had it done so, the preliminary injunction could not have been granted, for even if Brody had had personal notice of the Village's findings and determinations and had challenged them in the Appellate Division, his objections could not conceivably have led to a rejection of the putative public purpose. Specifically, his objections, as stated at the June 7 hearing, were simply that while he "would like to see the project continue and go forward," the laundromat on his property was of substantial value to local residents and thus he would "like it to be considered that possibly where my buildings are, there might be a way that they might be able to remain." Such comments—directed not to challenging the public use but to

---

1. While Brody also alleged procedural due process violations resulting from the lack of an opportunity to engage in an adversarial hearing and from the requirement that all challenges to the legality of the condemnation be raised prior to the condemnor filing a notice of condemnation, the district court did not find that these grounds warranted a preliminary injunction and thus they are not before this Court.

persuading Village officials not to include his property in the project—were completely inapposite to the "extremely narrow" constitutional inquiry into whether the proposed taking served a public purpose. *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 240, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (internal quotation marks omitted). Nor on any view could they remotely compare to the injury to the Village in further delaying its efforts to redevelop its blighted areas.

Accordingly, the order of the District Court granting a preliminary injunction is VACATED and the matter REMANDED for further proceedings consistent with this opinion.