NATIONAL FUEL GAS SUPPLY CORPORATION, Plaintiff,

v.

138 ACRES OF LAND IN THE VILLAGE OF SPRINGVILLE, COUNTY OF ERIE, STATE OF NEW YORK; Mathew Mahl; Ardent Resources, Inc.; U.S. Energy Development Corporation; Robert Dzara; Maria Dzara; and Unknown Others, Defendants.

Robert Dzara and Maria Dzara, Plaintiffs,

v.

U.S. Energy Development Corporation, and National Fuel Gas Supply Corporation, Defendants.

Joseph Anzulewicz and Patricia Anzulewicz, John H. Baker, Andrew J. Berger and Carol Ann Soldo–Berger, Ruth M. Berger, Gary T. Blakely and Mary E. Blakely, David M. Brooks and Darryle Brooks, Daniel Cappola and Elizabeth Cappola, Cynthia Cary Fowler, William Cary Fowler, Elmer Ciszak and Loretta Ciszak, William H. Cranston and Mary A. Cranston, George A. Donhauser, Robert Dzara and Maria Dzara, Neal Eagan and Julia Eagan, Ken Gaines, Robert L. Gebhard, Thomas J. Geelan, Cecil Goodremote, Jr., George Goodremote, Gerard Goodremote, Joseph Goodremote, Leone Goodremote, Allen Hauri and Deborah Hauri, Brian Hausrath, Harold E. Hill, Jr. and Carolyn R. Hill, Dennis R. Hopkins and Donna M. Hopkins, Harry Horner, Jr., Peter L. Hunter and Sharon L. Hunter, Robert V. Janiga, Daniel G. Kessler and Jeanne Kessler, Randy D. Kroll and Jennifer Lackie–Kroll, Daniel C. Kwaizer, David J. Learn and Janet M. Learn, John Lipinczyk and Ann Margaret Ferguson, William L. Lutz and Paula K. Lutz, Matthew Mahl and Elizabeth Mahl, David McCann and Marilyn McCann, Joseph P. McCarthy and Karen L. McCarthy, Dennis E. Meyers and Marlene H. Meyers, John J. Mihalik and Nora Murphy Mihalik, Carol Nason, Irma R. Nunweiler, James P. Orndorff, Lawrence P. Pajak and Linda L. Pajak, Robert J. Raber, Michael Reilly, Maureen A. Rejewski, Linda Repp, Joseph P. Rychlik, Edmund C. Salzler, William R. Salzler, Helmut Schuetze and Monica Schuetze, Robert Schunke and Diane Schunke, Donald L. Skowronski and Christine Skowronski, Ladonna Snyder, Salvatore Sorrento, Harry Steff and Mary Steff, Daniel A. Stevens and Luann Stevens, Alexander Tuttle, David Webster, Judith Wright, Phillip R. Wright and Linda Wright, Eric Zaccardo, and Donald Zittel Plaintiffs,

v.

National Fuel Gas Supply Corporation, Defendant.

Nos. 99–CV–602C(M), 99–CV–603C(M), 00–CV–791C(M).

United States District Court, W.D. New York.

Sept. 27, 2001.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Edward S. Bloomberg, Esq., of Counsel), Buffalo, NY, for Plaintiff National Fuel Gas Corporation in 99–CV–602, and Defendant National Fuel Gas Supply Corporation in 99–CV–603 and 00–CV–791;

and (Richard F. Griffin, Esq., of Counsel), Buffalo, NY, for Defendant U.S. Energy Development Corporation in 99–CV–602 and 99–CV–603, and for Defendant National Fuel Gas Supply Corporation, 00–CV–791.

Jaeckle Fleischmann & Mugel, LLP (John T. Kolaga, Esq., of Counsel), Buffalo, NY, for Defendants 138 Acres of Land, et al., in 99–CV–602; and for all Plaintiffs in 99–CV–603 and 00–CV–791.

Killeen & Killeen (Henry W. Killeen, III, Esq., of Counsel), Orchard Park, NY, for Defendants 138 Acres of Land, et al. in 99–CV–602; and for all Plaintiffs in 00–CV–791.

## INTRODUCTION

CURTIN, District Judge.

Initially, this court had jurisdiction of five actions involving National Fuel: *National Fuel Gas Supply Corp. v. 138 Acres of Land*, 99–CV–602; *Dzara v. U.S. Energy Development Corp.*, 99–CV–603; *Anzulewicz v. National Fuel Gas Supply Corp.*, 00–CV–791; *National Fuel Supply Corp. v. Stevens*, 00–CV–486; and *National Fuel Gas Supply Corp. v. Mahl*, 00–CV–616. *138 Acres*, *Dzara*, and *Anzulewicz* are still before this court, while *Stevens* and *Mahl* were remanded to New York State Supreme Court based on defects in the landowner-plaintiffs' removal petitions. *Stevens*, Item 28; *Mahl*, Item 15. The court subsequently denied the *Stevens* and *Mahl* motion for reconsideration. *Stevens*, Item 37; *Mahl*, Item 24.

Litigation in the remaining cases has continued, and presently before the court are four motions related to these "National Fuel" cases: (1) a motion to extend the time to serve the complaint in *Anzulewicz;* (2) a motion to extend the time for permission to move for class certification in *Anzulewicz;* (3) a motion for a Case Management Order to coordinate discovery in the state and federal court cases; and (4) a

motion for a preliminary injunction based on the All Writs Act to remove to federal court the *Stevens* and *Mahl* actions currently being litigated in state court.

During oral argument on July 18, 2001, the court granted the plaintiffs' motion to extend the time to serve the complaint and the motion to extend the time for permission to move for class certification in *Anzulewicz*, as there was no opposition to these motions. Plaintiffs shall serve the *Anzulewicz* complaint by October 26, 2001. Plaintiffs shall also move for class certification in *Anzulewicz* by October 26, 2001.

Also during oral argument, one of the National Fuel attorneys, Richard Griffin, suggested that the motion for adoption of the proposed Case Management Order would best be decided after the court ruled on the All Writs Act motion submitted by attorneys Henry Killeen and John Kolaga on behalf of their landowner clients. The court agreed. However, based upon the decision reached below on the All Writs Act motion and the fact that the New York State Supreme Court has denied the landowners' motion for discovery, the landowners' application for a Case Management Order is denied. *Dzara*, Item 28.

## FACTS

In December 2000, this court remanded the *Mahl* and *Stevens* actions to state court, finding that defects in the landowner parties' petitions precluded removal. *Stevens*, Item 28; *Mahl*, Item 15. In the *Mahl* action, counsel argued that this court's August 24, 2000 decision in *138 Acres* provided the necessary authority for this court to retain jurisdiction of the case under the All Writs Act. *138 Acres*, Item 32. The court rejected that argument, holding that "This case does not present the sort of exceptional circumstances envisioned by the All Writs Act." *Mahl*, Item 15, p. 6, n. 2. Landowner counsel then filed

a motion for reconsideration on January 3, 2001, which this court denied by orders dated March 24, 2001 and April 3, 2001, noting that it was divested of jurisdiction in both cases and could not review the remand order. *Stevens*, Item 37; *Mahl*, Item 24.

However, following a telephone conference between counsel on January 29, 2001, the court issued an order dated February 5, 2001, allowing counsel for the landowners to file an appropriate motion based on the All Writs Act concerning the cases pending in both state and federal court. *Stevens*, Item 33, p. 2.

On March 30, 2001, landowner counsel filed a joint motion for a preliminary injunction. They seek an injunction against the maintenance of certain proceedings involving National Fuel and the landowners in the New York State Supreme Court. Specifically, the landowners seek the following relief: (1) an order removing to federal court the National Fuel-landowner actions currently in state court; (2) an order directing that National Fuel litigate in federal court any claims it may have against landowners arising out of conduct in the Zoar Field or under the 1999 Federal Energy Regulatory Commission ("FERC") order; (3) an order enjoining National Fuel from litigating any claims against moving parties arising out of conduct in the Zoar field or under 1999 FERC order, in any other forum. *Anzulewicz*, Item 8, p. 3. As authority for the preliminary injunction, landowners cite the All Writs Act and the *Minnich v. Gargano* decision of Judge Harold Baer of the Southern District of New York, 2001 WL 46989 (S.D.N.Y. Jan. 18, 2001). The *Minnich* court granted preliminary injunctive relief against the maintenance of certain proceedings in the New York State Supreme Court under the New York Eminent Domain Procedure Law on the ground that such proceedings violated the due process rights of the landowners.

National Fuel submitted a memorandum of law in opposition to the landowners' motion for a preliminary injunction, *138 Acres*, Item 46, and the landowners submitted a reply. *138 Acres*, Item 53. Oral argument was held on July 18, 2001. Mr. Killeen provided the court with an extensive factual background underlying the numerous proceedings, which generally concern storage of natural gas approximately 1,700 feet below ground under 210 parcels of land in the Springville area. At oral argument, National Fuel contended that the various facts to which Mr. Killeen made reference concerned administrative issues that should properly be taken up before FERC. Further, National Fuel maintained that the Second Circuit's interpretation of the All Writs Act, which was the gravamen for the landowners' preliminary injunction motion, did not provide a basis for the relief the landowners were seeking.

Counsel then submitted a number of post-argument letters. *Dzara*, Items 41–46, *138 Acres*, Item 65. Attached to the August 3, 2001 letter of Richard Griffin, Esq. was the decision of New York State Supreme Court Justice Eugene Fahey. *Dzara*, Item 46. Judge Fahey denied the landowners' motions for dismissal or stay of the proceedings, discovery, and vacated the notices of pendency relating to the proceedings. National Fuel's motions and petitions were granted, resulting in acquisition of title to the subsurface natural gas storage easements. *Id.* p. 3. The State Court held that the underground taking was *de minimus*, that the procedural requirements of the New York Eminent Domain Procedure Law ("EDPL") had been complied with, that the proceeding did not violate the landowners' due process rights, and that the landowners' loss is compensa-

tory in nature and can be addressed by Article 5 of the EDPL. *Id.* p. 6.

## DISCUSSION

### I. Preliminary Injunction

#### A. Legal Standard

■ A party moving for a preliminary injunction must show (1) the threat of irreparable injury and (2) a likelihood of success on the merits. *See Carpenter Technology Corp. v. City of Bridgeport,* 180 F.3d 93, 97–98 (2d Cir.1999). The injury threatened must be "neither remote nor speculative, but actual and imminent." *Vittoria Corp. v. New York Hotel and Motel Trades Council, AFL–CIO,* 30 F.Supp.2d 431, 437 (S.D.N.Y.1998) (citation omitted). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.... In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 233–34 (2d Cir.1999) (quotation and citation omitted).

#### B. Application

■ The landowners appear to base their "irreparable injury" argument on the fact that parallel proceedings on condemnation issues are taking place in both the state and federal court, resulting in a "horrendous duplication of effort" that has consequently "imposed massive and unnecessary burdens" on them. *138 Acres,* Item 53, p. 3. The landowners believe that the parallel proceedings have "placed a cloud over the efficacy of this Court's prior orders dealing both with the merits and with discovery," *id.,* and that this may result in "a significant risk of inconsistent decisions on identical issues ...." *Id.,* p. 13.

The fact that there may be "parallel proceedings" in both state and federal court that *may* yield inconsistent results does not represent a threat of irreparable injury. *See Danny's Construction Co., Inc. v. Birdair, Inc.,* 136 F.Supp.2d 134, 141 (W.D.N.Y.2000). Cases are legion where parallel proceedings, involving substantially the same parties contemporaneously litigating substantially the same issues in state and federal fora, take place. Parallel litigation, in and of itself, is not unusual in American jurisprudence. *See, e.g.,* cases discussing the *Colorado River* abstention doctrine, *i.e., Woodford v. Community Action Agency of Greene County,* 239 F.3d 517 (2d Cir.2001). Either party may have an opportunity to cite *res judicata* or collateral estoppel in subsequent litigation to offset the possibility of conflicting determinations.

The landowners have barely pleaded and certainly not shown irreparable injury. Nevertheless, since both the landowners and National Fuel focused their All Writs Act preliminary injunction arguments on the "likelihood of success on the merits" element, the court will explore those contentions.

### II. The All Writs Act

#### A. Legal Standard

When arguing the merits of their motion, the landowners contend that the All Writs Act, 28 U.S.C. § 1651(a), provides the requisite authority for a preliminary injunction. The All Writs Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

■ Traditionally, use of the All Writs Act has been most commonly invoked by a federal district court to preserve its jurisdiction. Often the All Writs Act has been used to remove an otherwise unremovable state court case in order to "effectuate and prevent the frustration of orders [the dis-

trict court] has previously issued in its exercise of jurisdiction otherwise obtained . . . ." *United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). The Act

> authorizes a federal court in exceptional circumstances to issue such orders to persons 'who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.'

*Benjamin v. Malcolm,* 803 F.2d 46, 53 (2d Cir.1986) (citation omitted). However, issuance of such writs has been limited to "exceptional circumstances," as enunciated in *In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1431 (2d Cir. 1993), or invoked as a "last resort," as Judge Sand was quoted as saying in *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855, 861 (2d Cir.1988).

In the Second Circuit, courts have found that "[t]he situations in which the All Writs Act has been applied to remove actions from state court all involve consent decrees or complex class litigation that would be undermined by actions in other courts." *Hyatt Corp. v. Stanton,* 945 F.Supp. 675, 692 (S.D.N.Y.1996). *See also Gehm v. New York Life Ins. Co.,* 992 F.Supp. 209, 211 (E.D.N.Y.1998) (citation omitted). For example, in *Yonkers Racing Corp.,* the district court removed an action where state court plaintiffs were in a position to frustrate the implementation of a federal consent decree entered by the court to remedy violations of civil rights. *Id.* at 864. In *In re Agent Orange,* the district court acted to preserve a class action settlement that it had approved, which was threatened by separate actions in state court. 996 F.2d at 1431. In *In re Baldwin–United Corporation,* 770 F.2d 328 (2d Cir.1985), the Second Circuit approved the district court enjoining state court actions that threatened the court's authority to approve settlements in multidistrict litigation, where settlement discussions were so far advanced that the district judge required full control. *Id.* at 337. *See also Neuman v. Goldberg,* 159 B.R. 681 (S.D.N.Y.1993); *United States v. Int'l. Brotherhood of Teamsters,* 907 F.2d 277 (2d Cir.1990).

■ It must be pointed out that "the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action." *In re Baldwin–United Corp.,* 770 F.2d at 336 (citing *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) and other cases). In addition, "[T]he All Writs Act is not a jurisdictional blank check which district courts may use whenever they deem it advisable. 'Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.' " *In re Agent Orange,* 996 F.2d at 1431 (citing *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985)). The Act "invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton v. Goldsmith,* 526 U.S. 529, 537, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999).

## B. Arguments of the Parties

The landowners cite *In re Agent Orange, U.S. v. Int'l Brotherhood of Teamsters, Yonkers Racing Corp., In re Baldwin–United Corp.,* and a Seventh Circuit

case, *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399 (7th Cir.2000), as authority for their motion for preliminary injunction under the All Writs Act. *Anzulewicz,* Item 8, p. 3. They express concern about the "potential for duplicative, harassing, expensive and potentially inconsistent discovery" in the federal and state court cases, particularly as the cases raise " 'common, even identical, questions of law and fact.' " *Anzulewicz,* Item 9, ¶¶ 2, 10. The landowners assert that the federal and state actions "cry out for consolidation before one Court ...." *Anzulewicz,* Item 10, ¶ 25. In addition, they claim that health, safety, and environmental risks associated with these cases present the kind of exceptional circumstances contemplated by the All Writs Act. *138 Acres,* Item 53, p. 3. The landowners argue that the scope of the All Writs Act extends beyond the narrow confines of enforcing a settlement or consent decree, as asserted by National Fuel. *Id.,* p. 13. Further, the evils of a multiplicity of litigation on common issues threatens the efficacy of this court's orders and its ability to manage these cases in an appropriate fashion, *id.,* p. 12, and presents a significant risk of inconsistent decisions on identical issues. *Id.,* p. 13.

National Fuel responds that the exceptional circumstances required by the All Writs Act do not exist here. This court "has not approved a settlement or any consent decree (or indeed, issued an order) which will be undermined by a ruling in the remanded cases." *138 Acres,* Item 46, p. 3. The *138 Acres* order cited by the landowners in their original motion to reconsider dealt only with the federal procedural requirements for bringing a condemnation action in federal court. In fact, claims National Fuel, the landowners are asking this court to reconsider, not protect, its prior decisions and orders, an invitation which this court has already rejected. *Id.,* p. 4.

### C. Analysis

■ The court agrees with National Fuel that the circumstances presented by the instant National Fuel cases do not represent the kind of "extraordinary circumstances" envisioned by the All Writs Act, which would allow a federal court to exercise its "residual authority" and compel the re-removal to federal court of the actions currently in state court, as well as the other relief the landowners have requested. These cases do not involve complex class litigation or a threat to a consent decree or final judgment, or any analogously extraordinary situation that allowed the federal courts in *Yonkers Racing Corp.* or *In re Agent Orange* to exercise discretionary jurisdiction under the All Writs Act. In fact, the landowners have presented no evidence of an imminent threat that the state court will overturn or frustrate the federal court's orders. Moreover, there is no federal court order that would be undermined by the concurrent actions in the state court. Although the All Writs Act was used in *Teamsters* to remove state court litigation so as to aid in the enforcement of a district court's order and to prevent repetitive and burdensome litigation and promote judicial economy, that result was necessary because a consent decree that had been in place for three years was threatened by collateral state lawsuits. The district court determined that an injunction was needed to protect the district court's jurisdiction over the parties to the consent decree, and proceeded under the authority of the All Writs Act. *United States v. Intl. Brotherhood of Teamsters,* 907 F.2d 277 (2d Cir.1990).

■ The All Writs Act is not to be used as a shortcut to remove an otherwise unremovable state court case or to consolidate state and federal court cases simply on the basis of judicial economy and burdensome parallel litigation, or simply to enforce a

non-final procedural or discovery order. Nor does it authorize re-reconsideration of a motion that has already been rejected by this court. Given the fact that the federal court cases are in their early stages, the All Writs Act is particularly inapplicable as a basis for the preliminary injunction requested by the landowners. Additionally, the state court has issued an order granting National Fuel title to the permanent natural gas storage easements below the landowners' properties pursuant to the EDPL. Removal of those state court cases to the federal court under the All Writs Act is entirely inappropriate under those circumstances.

## III. Additional Arguments

### A. Due Process Argument

■ The landowners raise a due process argument based on *Minnich v. Gargano*, 2001 WL 46989 (S.D.N.Y. Jan.18, 2001), which they claim provides a separate basis for injunctive relief. The landowners in this case point out that the judge in *Minnich* granted preliminary injunctive relief against the maintenance of certain proceedings in New York State Supreme Court under the New York Eminent Domain Procedure Law "on the ground that the maintenance of such proceedings violated the rights of certain property owners to due process under the United States Constitution . . . ." *Anzulewicz*, Item 8, p. 2. They assert that National Fuel's condemnation cases "seek to forcibly condemn an interest in [their] land on the basis of a FERC Certificate that was admittedly issued without notice to [them] or giving them an opportunity to be heard with respect to NFG's proposal," which is a violation of their right to due process. *138*

*Acres*, Item 53, p. 10. As a result, the landowners assert that they were unable to inform FERC about the serious health, safety, and environmental risks from escaping gas because they had no notice of National Fuel's application. They ask the court to use the authority exercised by Judge Baer in *Minnich* as the basis for the relief they seek here.

In *Minnich*, the Village of Port Chester held hearings which eventually resulted in the condemnation of certain property pursuant to the EDPL. The Village then instituted a proceeding in State Supreme Court to acquire title to the property. One of the property owners, William Brody [1], asserted that he had no notice of the second hearing.[2]

Brody filed a federal action, alleging that the EDPL violated the Due Process Clause, on its face and as applied, i.e. due process required the Village to provide persons whose property was subject to condemnation with personal notice of the hearing and of the Village's findings and determinations. The trial court found that Brody had "standing to claim lack of personal notice of the determination and findings," and that he was "likely to prevail on the standing issue." 2001 WL 46989 at *4. It then proceeded to address the merits of Brody's due process claim and granted his motion for a preliminary injunction.

The Second Circuit in *Brody v. Village of Port Chester*, 261 F.3d 288 (2d Cir.2001), vacated the preliminary injunction granted in *Minnich*. It held that Brody did not suffer actual or threatened injury and thus lacked standing to bring his claims. *Id.* at 290. Mr. Killeen urges that *Brody* nevertheless left undisturbed the legal analysis

---

1. The other property owner plaintiffs were William Minnich and St. Luke's Pentacostal Church. The court did not grant them any relief.

2. Brody learned of and attended the Village's first public hearing. The Village subsequently determined that it had not fully complied with the EDPL regarding notice, and held a second hearing a month later.

in *Minnich* "with regard to the application of due process analysis to condemnation proceedings." *138 Acres,* Item 65, p. 1. Contrary to Mr. Killeen's assertions, *Brody* did not leave Judge Baer's due process conclusions undisturbed. The court found that Brody had no standing to bring his motion for preliminary injunction because he suffered no injury in fact. Therefore, the Second Circuit had no reason to review the due process arguments which did not survive after Brody was found to have no standing. The trial court decision in *Minnich* is of no help to the landowners in this court.

Further, on the record before this court, there is no evidence that FERC did not comply with its regulations concerning notice when it considered National Fuel's application. However, even if the landowners did not receive proper notice, it would not make a difference in this proceeding. As *Time Warner Cable v. Bloomberg, L.P.,* 118 F.3d 917, 929 (2d Cir.1997), cited in *Brody,* noted, "Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests" when deciding the question of irreparable harm. Clearly FERC was acting in an area in which the public interest was involved, and the balance of those interests would weigh against the landowners. In any case, whether or not the landowners received notice of the FERC proceedings is irrelevant to the present application for a preliminary injunction seeking an order transferring these cases to federal court. The landowners fail to show irreparable injury or a probability of success on the merits.

For these reasons, the court finds that the due process arguments raised by the landowners are insufficient as grounds to exercise its All Writs Authority to provide them with the relief they seek.

**B. National Fuel's Argument**

National Fuel contests the landowners' claim that *Anzulewicz* is "designed as a vehicle for the resolution of all the Zoar Storage Field claims in one case," given that the case cannot withstand a motion to dismiss under Rule 12(b)(6). The court finds this argument premature and declines to address it here, given that the *Anzulewicz* complaint had not yet been served at the time these arguments were made.

### *CONCLUSION*

For the reasons set forth above, the landowners' motion for a preliminary injunction based on the All Writs Act is denied. *Anzulewicz,* Item 10. The landowners' application for a Case Management Order is also denied. *Dzara,* Item 28. The motion to extend the time to serve the complaint and the motion to extend the time for permission to move for class certification in *Anzulewicz* is granted. *Anzulewicz,* Items 6 and 7.

So ordered.